IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LEXINGTON INSURANCE COMPANY, as assignee and subrogee of NEBCO, Inc. and Watkins Concrete Block,

Plaintiff,

vs.

JERRY PIERRO, ALONZO BALTAZAR, JAKE EPPERSON and JAKE'S CUSTOM LAWNS LLC,

Defendants.

**8:25-CV-522**

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST THE EPPERSON DEFENDANTS AND THE EPPERSON DEFENDANTS' MOTION TO QUASH SERVICE, VACATE CLERK'S ENTRY OF DEFAULT, DISMISS UNDER FED. R. CIV. P. 4(m), AND DENY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

This case involves allegations of misconduct by employees and customers of a building materials supplier, brought by the supplier's insurer, as subrogee, to recover over $200,000 in losses to the supplier for which the insurer has indemnified the supplier. Filing 1. It is now before the Court on Plaintiff Lexington Insurance Company's (Lexington's) Motion for Entry of Default Judgment for Sum Certain (Motion for Default Judgment) against Defendants Jake Epperson and Jake's Custom Lawns LLC (the Epperson Defendants). Filing 40. It is also before the Court on the Epperson Defendants' Motion to Quash Service, Vacate Clerk's Entry of Default, Dismiss Under Fed. R. Civ. P. 4(m), and Deny Plaintiff's Motion for Default Judgment (Epperson Defendants' Motion). Filing 42. For the reasons stated below, the Court reserves judgment on Lexington's Motion for Default and denies the Epperson Defendants' Motion.

# I. INTRODUCTION

## A. Factual Background

Lexington insures NEBCO and its subsidiaries for losses sustained due to employee dishonesty. Filing 1 at 4 (¶ 24). One subsidiary of NEBCO is Watkins Concrete Block (Watkins), a supplier of building materials located in Omaha, Nebraska. Filing 1 at 2 (¶¶ 9–10).

From 2019 through March 17, 2023, NEBCO and Watkins suffered losses resulting from a kickback scheme developed between two employees and several customers of Watkins. Filing 1 at 3 (¶¶ 14, 20). Defendant Jerry Pierro and defendant Alonzo Baltazar, both citizens and residents of Omaha, Nebraska, worked for Watkins as "Yard Materials Handlers." Filing 1 at 1 (¶¶ 2–3), 2 (¶ 9). They were responsible for loading purchased materials into a customer's vehicle according to the quantity specified in the receipt issued by Watkin's main office. Filing 1 at 2 (¶¶ 11–13). Lexington alleges that defendants Pierro and Baltazar developed a kickback scheme with certain customers where they would "load a greater quantity of the materials than specified on the receipt" and receive an "'under-the-table' cash payment" from participating customers. Filing 1 at 3 (¶¶ 17–18). Jake's Custom Lawns, LLC (Custom Lawns), a Nebraska limited liability company with its principal place of business in Omaha, Nebraska, participated in this scheme with defendants Pierro and Baltazar through its sole member, defendant Jake Epperson, a citizen and resident of Nebraska. Filing 1 at 1–2 (¶¶ 4–6); Filing 1 at 3 (¶ 14).

Lexington alleges that Watkins lost "no less than $202,585.17" because of Defendants' scheme. Filing 1 at 4 (¶ 23). Lexington indemnified NEBCO and Watkins for these losses pursuant to the insurance policy. Filing 1 at 4 (¶ 25). In doing so, Lexington became subrogated to NEBCO and Watkins. Filing 1 at 4 (¶ 26). Lexington alleges further that Defendants have not returned or paid the value of the materials to NEBCO, Watkins, or Lexington that they misappropriated from Watkins. Filing 1 at 4 (¶ 27).

### B. Procedural Background

Lexington, as assignee and subrogee of NEBCO and Watkins, filed its Complaint against Jerry Pierro, Alonzo Baltazar, and the Epperson Defendants on August 26, 2025. Filing 1. Lexington's Complaint included five claims: fraud (Count I), conversion (Count II), civil conspiracy (Count III), breach of fiduciary duty (Count IV), and unjust enrichment (Count V). Filing 1. Claim IV was specific to defendants Pierro and Baltazar. Filing 1 at 7.

On September 3, 2025, Lexington mailed a Notice of Lawsuit and Request to Waive Service of Summons by regular mail to the Epperson Defendants at 6531 S. 162nd Avenue. Filing 44 at 2. Defendants did not return the waiver. Filing 43 at 2. Then, on October 9, 2025, Lexington "attempted personal service through a process server at 6531 S. 162nd Avenue." Filing 44 at 2. During this attempt, "[a]n unidentified adult at the property told the process server that Epperson did not reside there and that Custom Lawns did not operate there." Filing 44 at 2.

Thereafter, Lexington consulted multiple sources to confirm the Epperson Defendants' addresses. Filing 44 at 2. First, the records with the Nebraska Secretary of State "showed Jake's Custom Lawns LLC as active, with its principal office, registered agent address, and designated office all at 6531 S. 162nd Avenue, and Jacob D. Epperson as the registered agent." Filing 44 at 3. Additionally, "USPS FOIA responses confirmed that both Epperson and Jake's Custom Lawns were known and received mail at 6531 S. 162nd Avenue." Filing 44 at 3. Finally, Lexington consulted LexisNexis SmartLinx which "identified 6531 S. 162nd Avenue as Epperson's only current known address." Filing 44 at 3.

On November 7, 2025, Lexington filed a motion for Alternative Service on the Epperson Defendants. Filing 14. United States Magistrate Judge Jacqueline M. DeLuca summarized Lexington's efforts as the following:

> [Lexington] diligently attempted service and [sought] an order permitting service on the . . . defendants through the following: posting a copy of the summons and complaint at the registered business address of Jake's Custom Lawns, LLC and the last known address of Epperson; mailing a copy of the summons and complaint by first class mail and certified mail, return receipt requested; and emailing a copy of the summons and complaint to the email address listed on Jake's Custom Lawns, LLC's website.

Filing 16 at 1 (internal footnote omitted). On November 10, 2025, Judge DeLuca denied Lexington's motion because "[a]lternate service is permitted under Nebraska law only after showing that service cannot be made by any other method under Nebraska law." Filing 16 at 2 (citing Neb. Rev. Stat. § 25-517.02). Since Nebraska law permits service of process by certified mail, Judge DeLuca found, "[Lexington] has not shown that service cannot be perfected with reasonable diligence by a method provided by statute.'" Filing 16 at 2.

On November 21, 2025, Lexington "mailed the Summons and Complaint by certified mail, return receipt requested, to both Epperson and Jake's Custom Lawns at 6531 S. 162nd Avenue." Filing 44 at 3. The certified mailings went "Unclaimed" according to USPS tracking, though not "Undeliverable." Filing 44 at 3.

On January 26, 2026, Judge DeLuca entered an Order to Show Cause giving Lexington until February 17, 2026, to show cause for why the claims against the Epperson Defendants should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m) for failure to serve the Complaint within 90 days of filing the lawsuit. Filing 20 at 1. Lexington timely filed a Response to Order to Show Cause setting out its attempts to serve the Epperson Defendants. Filing 25. Additionally, Lexington filed its Renewed Motion for Alternative Service (Renewed Motion). Filing 23. On February 18, 2026, Judge DeLuca granted the Renewed Motion and prescribed the following alternative methods of service:

1. Posting a copy of the Summons and Complaint in a conspicuous place at 6531 S. 162nd Avenue, Omaha, NE 68135;

2. Mailing a copy of the Summons and Complaint by first class mail and certified mail, return receipt requested, addressed to Epperson and Jake's Custom Lawns at 6531 S. 162nd Avenue, Omaha, NE 68135 and PO Box 451022, Omaha, NE 68144; and

3. Emailing a copy of the Summons and Complaint to Epperson and Jake's Custom Lawns at jakescustomlawns@gmail.com; and

4. Promptly filing an affidavit of service with the Court.

Filing 26 at 2–3. Judge DeLuca's Order did not specify a date by which the affidavit of service had to be filed.

On April 27, 2026, Judge DeLuca issued another Order to Show Cause allowing Lexington until May 18, 2026 "to show cause why the claims against [the Epperson Defendants] should not be dismissed pursuant to Federal Rule of Civil Procedure 4(m)." Filing 34 at 1.

On May 11, 2026, Lexington filed an Affidavit of Service declaring under penalty of perjury that each of the methods prescribed by Judge DeLuca's Order had been attempted. Filing 36. More specifically, in its brief in opposition to the Epperson Defendants' Motion to Quash, Lexington explains,

> On March 20, 2026, Plaintiff mailed the Summons and Complaint by first-class mail and certified mail, return receipt requested, to both 6531 S. 162nd Avenue and PO Box 451022. The first-class mailings were not returned as undeliverable. The certified mailings were unclaimed but not returned as undeliverable. USPS tracking confirmed items to the PO Box were available for pickup at the post office.
>
> On March 20, 2026, Plaintiff emailed the Court's alternative-service order, the Complaint, and the Summonses to jakescustomlawns@gmail.com, the email address listed on Jake's Custom Lawns's own website. The email expressly warned Epperson to contact Plaintiff's counsel or "we will seek the entry of judgment against you."
>
> On March 24, 2026, a process server posted the Summons and Complaint at 6531 S. 162nd Avenue.

Filing 44 at 4 (internal citations omitted).

On May 12, 2026, Lexington requested that the Clerk of Court enter default against the Epperson Defendants "on the basis that the record in this case demonstrates that [the Epperson] Defendants have failed to plead or otherwise defend." Filing 37 at 1. The Clerk filed the Entry of Default. Filing 38. The next day, Lexington filed the Motion for Default Judgment against the Epperson Defendants now before the Court. Filing 40.

On May 28, 2026, the Epperson Defendants filed a Notice of Limited Special Appearance. Filing 41. Also on May 28, 2026, the Epperson Defendants filed its Motion to Quash Service, Vacate Clerk's Entry of Default, Dismiss Under Fed. R. Civ. 4(m), and Deny Plaintiff's Motion for Default Judgment. Filing 42. The Epperson Defendants' Motion is also now before the Court.

## II. LEGAL ANALYSIS

The Court begins its analysis with the part of the Epperson Defendants' Motion seeking to quash service of process (Motion to Quash). The Epperson Defendants' additional requests that this court vacate the Clerk's entry of default (Motion to Vacate Entry of Default) and dismiss the case under Rule 4(m) (Motion to Dismiss) are predicated on their Motion to Quash. Then the Court will determine whether Lexington is entitled to entry of default judgment from the Court.

### A. The Court Denies the Epperson Defendants' Motion to Quash

*1. The Parties' Arguments*

In support of their Motion to Quash, the Epperson Defendants argue that Lexington's attempts at service of process according to the alternative methods prescribed by Judge DeLuca's Order violate due process in three respects. Filing 43 at 9–10. First, the Epperson Defendants contend that the proof of service by posting failed to adequately demonstrate that the posting "occurred at the address the Court ordered and on a certain date." Filing 43 at 7. Second, the Epperson Defendants allege insufficient proof of service by mail because Lexington never

"allege[d] attempted service by first-class mail" and the attempt by certified mail lacked the required "signed return receipt." Filing 43 at 7. Third, the Epperson Defendants argue that Lexington's request for alternative service at an unreliable service location compromises Judge DeLuca's Order granting methods of alternative service. Filing 43 at 8. Consequently, the Epperson Defendants assert that Lexington's continued attempts at service violated due process. Filing 43 at 9–10.

In response, Lexington argues that it executed and provided adequate proof of service for each method of alternative service prescribed by Judge DeLuca's Order. Filing 44 at 1, 5–6. Lexington argues that the "process server's proof of service [by posting], combined with counsel's affidavit, establishes that posting occurred at the front door of 6531 S. 162nd Avenue." Filing 44 at 6 (citing Filing 36; Filing 36-1). Even if the proof of service suffers from a technical deficiency, Lexington further asserts that the Court should permit amendment or supplemental evidence as the appropriate remedy rather than quashing service. Filing 44 at 6. Lexington also argues that it provided adequate proof of sending service by first-class mail in accordance with Judge DeLuca's Order and that service by certified mail does not "require a signed return receipt as a condition of valid service." Filing 44 at 6. Finally, Lexington argues that it satisfied any due process concern by confirming the address associated with the Epperson Defendants through three independent sources. Filing 44 at 7. As a result, Lexington maintains that the "multi-channel approach" mandated by Judge DeLuca's order "far exceeds what due process requires." Filing 44 at 7.

*2. Applicable Standards for Service of Process*

Supreme Court precedent recognizes that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of [process] must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure . . . ." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). If service is ineffective, "a district court has the discretion to determine whether to dismiss or quash." Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1353 (3d ed.).

Rule 4 of the Federal Rules of Civil Procedure governs service of process in federal actions. *Omni Cap. Int'l*, 484 U.S. at 104. In relevant part, Rule 4(e) permits service on individuals within a judicial district by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" or by using one of the methods expressly stated in the Rule. Fed. R. Civ. P. 4(e). Nebraska's service of summons statute provides multiple methods of service including service by personal, residence, certified mail, or designated delivery. Neb. Rev. Stat. § 25-505.01. These methods of service also apply by reference in the federal rules to domestic corporations. *See* Fed. R. Civ. P. 4(h)(1).

When a plaintiff can demonstrate "[u]pon motion and showing by affidavit that service cannot be made with reasonable diligence by any other method provided by statute," Nebraska law then allows the court to fashion alternative methods of service.[1] Neb. Rev. Stat. § 25-517.02. Of special relevance here, the court may prescribe "any manner reasonably calculated under the

[1] The full list of possible alternative methods is provided in Neb. Rev. Stat. § 25-517.02. The statute permits service "(1) by leaving the process at the defendant's usual place of residence and mailing a copy by first-class mail to the defendant's last-known address, (2) by publication, or (3) by any manner reasonably calculated under the circumstances to provide the party with actual notice of the proceedings and an opportunity to be heard." Neb. Rev. Stat. § 25-517.02.

circumstances to provide the party with actual notice of the proceedings and an opportunity to be heard." Neb. Rev. Stat. § 25-517.02(3).

In addition to methods of service, the federal rules require the plaintiff to file "proof of service . . . to the court" regardless of method. Fed. R. Civ. P. 4(*l*)(1). "Failure to prove service," however, "does not affect the validity of service." Fed. R. Civ. P. 4(*l*)(3). Instead, "[t]he court may permit proof of service to be amended." *Id.*

*3. Judge DeLuca Properly Ordered Alternative Service at 6531 S. 162nd Avenue*

The Court rejects the Epperson Defendants' characterization of Judge DeLuca's authorization of alternative service at 6531 S. 162nd Avenue as "unsound" or "based on materially incomplete representations." Filing 43 at 8. Any concerns with the validity of the Epperson Defendants' address are dispelled by Lexington's thorough efforts at confirmation and the state statutory requirements imposed on the Epperson Defendants.

The Court concludes that Lexington took adequate measures to verify that the address of the Epperson Defendants was proper. These measures included confirming the address of the Epperson Defendants in the records of the Nebraska Secretary of State, USPS FOIA responses, and LexisNexis SmartLinx. Filing 15 at 2–3. Judge DeLuca's Order for alternative service on the same address reasonably relied on Lexington's efforts of confirmation and contrary to the Epperson Defendants' assertion is not a violation of the Defendants' "fundamental due process." Filing 43 at 8.

The Court also points out that Nebraska law mandates that a limited liability company designate an office and appoint a registered agent for service of process. Neb. Rev. Stat. § 21-113. Custom Lawn's "designated office address" according to Nebraska records is 6531 S. 162nd Avenue. Filing 24-1. Its "registered agent" is "Jacob D. Epperson" whose address is also 6531 S. 162nd Avenue. Filing 24-1. Nebraska law also provides that if an appointed agent for service of

process "cannot with reasonable diligence be found at the agent's street address, [service of process] on the limited liability company . . . may be made by registered or certified mail, return receipt requested, to the company at its designated office" or "any other manner provided by law." Neb. Rev. Stat. § 21-116(b), (d). Therefore, even if Lexington had taken fewer steps to confirm the address, Judge DeLuca's Order properly prescribed alternative service on Custom Lawns at 6531 S. 162nd Avenue.

*4. Lexington Provided Adequate Proof for Service of Process*

Next, the Epperson Defendants challenge the adequacy of proof provided by Lexington for service by posting and by mail. The Court finds the proof of service by posting filed by Lexington on May 12, 2026, was adequate and timely. Judge DeLuca's Order required "[p]osting a copy of the Summons and Complaint in a conspicuous place at 6531 S. 162nd Avenue." Filing 26 at 2. The process server hired by Lexington filled out an AO 440 form that "declare[d] under penalty of perjury that" the posting was made "[a]t the front of the door" of "Jake Epperson and Jake's Custom Lawns LLC." Filing 36-1. The Court finds no hint of evidence in the server's form or Lexington's affidavit that indicates a fully filled out "proof of service" form fails to provide adequate proof of service by posting. Additionally, Lexington filed the server's proof of service with the Court on May 11, 2026. Filing 36. That filing is a whole seven days prior to the date of expiration ordered by Judge DeLuca in the Order to Show Cause. *See* Filing 34.

The Court rejects the Epperson Defendants' challenge that "[Lexington] does not even allege attempted service by first-class mail" to 6531 S. 162nd Avenue and PO Box 451022. Filing 43 at 7. Lexington certified in its Affidavit of Service on May 11, 2026, that it sent "Summons and Complaint . . . by first class mail" on March 20, 2026, and that these mailings were "not returned as undeliverable." Filing 36 at 2. The Court is satisfied that Lexington complied with Judge

DeLuca's Order for service by first-class mail and that Lexington provided adequate proof by affidavit.

The Court further rejects the Epperson Defendants' dispute with the adequacy of Lexington's proof of service by certified mail. The Epperson Defendants first misunderstand Judge DeLuca's order prescribing service by certified mail to invoke the Nebraska certified mail service statute. Neb. Rev. Stat. § 25-505.01(1)(c). Judge DeLuca's Order, however, was issued under Neb. Rev. Stat. § 25-517.02. Therefore, the alternative methods of service are not bound by the process required of traditional methods of service. Accordingly, Lexington filed the "[t]racking information for the certified mail" with its Affidavit of Service on May 11, 2026. Filing 36 at 2, 36-2. The Court finds that these filings are sufficient proof of service by certified mail according to Judge DeLuca's Order. Additionally, the Epperson Defendants argue Judge DeLuca's Order to mail service by certified mail with return receipt requested requires a signed receipt of the mailing for proof of valid service. Filing 43 at 8. The Court finds, however, that a request for signature on receipt is just that—a request. Therefore, Judge DeLuca's Order did not require a signed receipt of proof of delivery.

*5. Lexington's Execution and Proof of Alternative Service According to Judge DeLuca's Order Does Not Raise Any Due Process Concerns*

The Court rejects the Epperson Defendants' argument that Lexington's attempts at service on the Epperson Defendants—either originally or according to Judge DeLuca's order granting alternative service of process methods—violated due process. The Epperson Defendants misunderstand due process to require actual notice. Instead, due process in the context of service requires, at minimum, "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

The Court concludes that the grounds presented by Lexington to Judge DeLuca in its request for alternative service of process do not raise due process concerns. Lexington provided the Court with documentation of its efforts to serve the Epperson Defendants including process-server attempts and certified mail. Filing 24. Additionally, Lexington demonstrated its efforts to verify the Epperson Defendants' address. Filing 24 at 2. Judge DeLuca concluded on the basis of these filings that "service [cannot] be made with reasonable diligence by traditional methods provided by Nebraska law." Filing 26 at 2. Therefore, Nebraska law authorized Judge DeLuca to fashion alternative methods of service. Neb. Rev. Stat. § 25-517.02.

The Court further concludes that the methods of alternative service of process prescribed by Judge DeLuca also do not raise a due process concern. Courts are permitted to fashion alternative service of process according to "any manner reasonably calculated under the circumstances to provide the party with actual notice of the proceedings and an opportunity to be heard." Neb. Rev. Stat. § 25-517.02(3); *see also Mullane*, 339 U.S. at 314 (explaining that the Constitution at a minimum requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The alternative methods prescribed by Judge DeLuca—including posting in a conspicuous place, mailing by first class mail and certified mail, and emailing the business email—demonstrate a comprehensive attempt at providing the Epperson Defendants with notice reasonably calculated under the circumstances to provide the Epperson Defendants with actual notice of this litigation. Neb. Rev. Stat. § 25-517.02(3); *Mullane*, 339 U.S. at 314.

Finally, the Court finds no due process violation arising from Lexington's attempts at alternative service on the Epperson Defendants. The Court reiterates that Lexington properly

executed and provided adequate proof of service for each method of alternative service prescribed by Judge DeLuca.

*6. Summary*

The Court denies the Epperson Defendants' Motion to Quash because Lexington properly effectuated alternative service of process. Additionally, the Court concludes that the proof of alternative service provided by Lexington is sufficient and does not require supplementation.

**B. The Court Denies the Epperson Defendants' Motion to Vacate Entry of Default**

*1. The Parties' Arguments*

After challenging the alternative service of process, the Epperson Defendants contest the Clerk's entry of default. The Epperson Defendants argue that because service of process was improper, the Court lacked jurisdiction to enter default against them. Filing 43 at 10. Therefore, the Epperson Defendants conclude that they are entitled to vacatur on the Clerk's entry of default solely on the grounds of a lack of jurisdiction. Filing 43 at 10.

In response, Lexington argues that any attempt to set aside the Clerk's entry of default must meet the requirements of "good cause" outlined in Rule 55(c). Filing 44 at 8. Lexington analyzes the three factors for "good cause" in turn and argues that they all weigh against vacatur. Filing 44 at 8 (citing *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)). First, Lexington argues that the "pattern of avoidance" demonstrated by the Epperson Defendants constitutes "culpable conduct." Filing 44 at 8. Second, the Epperson Defendants' do not demonstrate a "meritorious defense" because they fail to present any substantive defense to the underlying claims in the litigation. Filing 44 at 8. Third, Lexington argues that "[v]acatur now at the default judgment stage would require [Lexington] to start over against parties who have demonstrated their intent to

evade this litigation." Filing 44 at 9. Thus, Lexington maintains that the Court should not vacate the Clerk's entry of default due to a finding of "good cause." Filing 44 at 8–9.

*2. Applicable Standards for Setting Aside the Clerk's Entry of Default*

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Eighth Circuit Court of Appeals recognizes that a defendant "is under no duty to respond to the rules of a court unless he is brought under its jurisdiction through the proper service of process." *Norsyn, Inc. v. Desai*, 351 F.3d 825, 829 (8th Cir. 2003). However, if a party falls within the jurisdiction of a court, the court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).

*3. The Court Declines to Vacate the Clerk's Entry of Default*

The Court rejects the Epperson Defendants' claim that the Clerk's entry of default should be vacated due to lack of jurisdiction over the Defendants. The Court previously concluded that service of process was valid. With valid service of process, the Court has all the necessary components to establish jurisdiction. Therefore, the Epperson Defendants are under a duty to "respond to the rules of [the] court" including responding or otherwise defending in the present litigation. *Norsyn*, 351 F.3d at 829. Because the Epperson Defendants failed to do so, the Clerk properly entered default.

The Court further concludes that no "good cause" exists to justify setting aside the Clerk's entry of default. *See* Fed. R. Civ. P. 55(c); *Johnson*, 140 F.3d at 784. Indeed, the conduct of the Epperson Defendants indicates to the Court a demonstrated intent to evade service and this litigation.

*4. Summary*

The Court denies the Epperson Defendants' Motion to Vacate Entry of Default. The Clerk properly entered default against the Epperson Defendants because Lexington adequately demonstrated that the Epperson Defendants have "failed to plead or otherwise defend" in this litigation. Fed. R. Civ. P. 55(a). Additionally, the Court finds there is no "good cause" to exercise its discretion to set aside the Clerk's entry of default. Fed. R. Civ. P. 55(c).

### C. The Court Denies the Epperson Defendants' Motion to Dismiss

*1. The Parties' Arguments*

In support of their Motion to Dismiss, the Epperson Defendants argue that the Court should dismiss the claims without prejudice because Lexington's attempts at service exceed the time limit allowed by the federal rules. Filing 43 at 12–13. The Epperson Defendants assert that Lexington did not properly effectuate service within the original 90-day period that ended on November 24, 2025. Filing 43 at 12.

The Epperson Defendants further argue that Lexington failed to properly serve process within the additional time granted for alternative service of process. Filing 43 at 12. The Epperson Defendants argue that

> [w]hen counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted, there is no good cause for the resulting delay if that method of service fails.

Filing 43 at 13 (citing *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996)). According to the Epperson Defendants, Lexington's awareness of a defect in service and failure to remedy resulted in an unjustifiable delay. Filing 43 at 13. Thus, the Epperson Defendants argue that the Court must dismiss the action without prejudice because service was not made within the specified amount of time. Filing 43 at 13.

In response, Lexington argues that the Court should deny the Epperson Defendants' Motion to Dismiss because Lexington timely executed alternative service. Filing 44 at 9–10. Lexington asserts that it demonstrated "good cause" for failure to serve according to traditional methods within the original 90-day service period. Filing 44 at 9. As support, Lexington points to the attempts at service by personal and certified mail, investigation and confirmation of the Epperson Defendants' addresses, and filing of two motions seeking court assistance. Filing 44 at 9. Since all traditional methods of service failed, Lexington concludes that Judge DeLuca's Order appropriately extended the original 90-day service period. Filing 44 at 9.

Lexington further argues that it complied with the appropriate extension of time allowed by Judge DeLuca's Order for alternative service by properly executing each alternative method and filing proof of service in March 2026. Filing 44 at 9.

Lexington also takes issue with the remedy of dismissal requested by the Epperson Defendants. Lexington argues that "even if this Court identified any curable deficiency in proof or method of service, the appropriate remedy would be amendment or supplementation" or "further limited service directions." Filing 44 at 9–10.

*2. Applicable Standards for Dismissal*

Rule 4(m) requires that a court must "dismiss [an] action without prejudice against [a] defendant or order that service be made within a specified time" when a plaintiff has failed to serve the defendant "within 90 days after the complaint." Fed. R. Civ. P. 4(m). "But if the plaintiff shows good cause for the failure, the court must extend time for service for an appropriate period." *Id.*

*3. Dismissal of Lexington's Claims Against the Epperson Defendants Is Inappropriate*

The Court first rejects as irrelevant the Epperson Defendants' allegation that Lexington failed to effectuate proper service within the original 90-day service period. It is clear that Judge

DeLuca's finding of "good cause" obviated the requirement for service through traditional methods within the 90-day service period. *See* Fed. R. Civ. P. 4(m). Therefore, the Court need only consider whether Lexington timely effectuated service within the extension permitted by Judge DeLuca for alternative service.

The Court has already concluded that Lexington's execution and proof of alternative service following Judge DeLuca's Order were adequate. The Court has also previously concluded that Lexington executed and filed proof of alternative service prior to the date of expiration set by Judge DeLuca. Thus, the Court finds no flaws in the timeliness of Lexington's efforts.

*4. Summary*

The Court denies the Epperson Defendants' Motion to Dismiss. Judge DeLuca properly granted additional time to Lexington to serve the Epperson Defendants by alternative methods of service. Then, Lexington properly and timely effectuated alternative service of process. Therefore, the Epperson Defendants are not entitled to dismissal without prejudice under Rule 4(m).

### D. The Court Reserves Judgment on Lexington's Motion for Default Judgment

*1. The Parties' Arguments*

In support of their Motion for Default Judgment, Lexington argues that damages are sufficiently established by competent evidence to justify the Court's grant of default judgment. Lexington supports its calculation of the value of recovery by submitting two affidavits—one by the Product Lead for Lexington and another by Lexington's counsel. Filing 40-2; Filing 40-3. The Product Lead declared that the fraudulent scheme of the Defendants caused "damages of no less than $202,585.17." Filing 40-2 at 3 (¶ 16). Lexington's legal counsel declared that the filing costs associated with Lexington's Complaint totaled $405.00. Filing 40-3 at 1 (¶ 3). In total, Lexington

concludes that the Court should enter default judgment against the Epperson Defendants for $202,990.17. Filing 44 at 10.

In response, the Epperson Defendants first argue that Lexington has failed to satisfy the "prerequisites for a sum certain default judgment under Rule 55(b)(1)." Filing 43 at 11. The Epperson Defendants argue that Lexington has "presented no calculation of any damages, no documents to support the amount claim[ed], or any evidence as to the amount attributable solely to Epperson and/or Custom Lawns." Filing 43 at 12. As a result, "an evidentiary hearing under Rule 55(b)(2) [is] required." Filing 43 at 12.

The Epperson Defendants also object to Lexington's allegation of joint and several liability without an evidentiary inquiry into apportionment. Filing 43 at 11. Because Lexington has "already obtained default judgment against Mr. Pierro," the Epperson Defendants claim that entry of default judgment against themselves would "create a manifest risk of double recovery." Filing 43 at 11–12. In response, Lexington asserts that the Epperson Defendants' double recovery claim "conflates judgment with collection." Filing 44 at 10. Lexington explains that "[a] joint and several judgment against additional participants does not constitute double recovery; it simply provides [Lexington] with an additional avenue to collect on its one entitlement." Filing 44 at 10–11.

*2. The Court Orders Further Submissions to Determine Damages Because Lexington's Evidence Is Insufficient to Award Entry of Default Judgment*

For the sake of clarity, the Court opts to analyze the parties' arguments in successive sections each with the relevant legal context.

a. Lexington Applies to the Court for Entry of Default Judgment Under 55(b)(2).

An entry of default judgment is governed by Rule 55(b). Fed. R. Civ. P. 55(b). Default judgment can either be entered by the Clerk or by the Court. Rule 55(b)(1) states:

> If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

Fed. R. Civ. P. 55(b)(1). "In all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

The Court determines that the analysis provided by the Epperson Defendants for whether Lexington has provided "a sum certain" is irrelevant. The Court recognizes that Lexington previously filed a Motion for Entry of Default Judgment for Sum Certain with the Clerk. Filing 40. However, Lexington applied to this Court for consideration of the entry of default judgment on the merits in the supporting brief for this litigation. Filing 44 at 10. Therefore, the standards applicable for entry of default judgment under Rule 55(b)(1) are no longer at issue. Instead, the Court looks to the standards associated with Rule 55(b)(2) for whether an entry of default judgment against the Epperson Defendants is appropriate.

b. Lexington Adequately Asserts a Legitimate Cause of Action Against the Epperson Defendants.

When considering the entry of default judgment, "it is incumbent upon the district court to ensure that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment." *Marshall v. Baggett*, 616 F.3d 849, 852–53 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). "Conceptually, . . . a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Richardson v. Duncan*, 117 F.4th 1025, 1029–30 (8th Cir. 2024) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam)). Thus, the Court must evaluate whether the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court finds that Lexington's Complaint adequately sets forth "unchallenged facts constitut[ing] a legitimate cause of action." *Marshall*, 616 F.3d at 852 (quoting *Murray*, 595 F.3d at 871). Lexington's Complaint properly alleges at least its claims of conversion, civil conspiracy, and unjust enrichment against the Epperson Defendants.[2] *See* Filing 1. The Court draws a reasonable inference on the basis of the pleadings that the Epperson Defendants were involved in the kickback scheme with the other Defendants. Additionally, the Epperson Defendants do not at present contest the allegations of their involvement. Accordingly, the Court concludes a cause of action against the Epperson Defendants exists to support a basis for entry of default judgment under Rule 55(b)(2). *Marshall*, 616 F.3d at 852–53.

c. Lexington Does Not Provide Sufficient Evidence to Support the Damages Amount to Warrant Entry of Default Judgment.

After establishing a legitimate cause of action, the Court must determine the plaintiff's damages based upon the evidence provided. *See* Fed. R. Civ. P. 55(b)(2). "A default judgment cannot be entered until the amount of damages has been ascertained. And actual damages must be proven to a reasonable degree of certainty." *United States v. Houser*, No. 4:22-CV-3092, 2022 WL 18670831, at *2 (D. Neb. Feb. 3, 2022) (internal citations omitted).

The Epperson Defendants' concern regarding double recovery is unwarranted. All of the Defendants in this litigation are properly joined as joint tortfeasors. *See* Fed. R. Civ. P. 20(a)(2). Additionally, an entry of default judgment against joint tortfeasors does not create a risk of "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Contribution claims against other liable Defendants may be available to the Epperson Defendants if the Court awards entry of default judgment. Accordingly, the Court concludes that the joint and

[2] The Court notes that it previously determined that Lexington's fraud claim failed to meet Rule 9 standards. Filing 19. Even so, Lexington does not need the fraud claim to warrant default judgment. *See Marshall*, 616 F.3d at 852.

several liability of the Defendants does not bar its ability to award entry of default judgment to Lexington.

On the other hand, the evidence provided by Lexington to support the alleged amount of damages does not satisfy the Court. The Court observes no factual basis in Lexington's original filing supporting the claim of damages for $202,585.17. *See* Filing 1. Furthermore, Lexington provides no additional evidence of calculation or metric for how it arrived at that sum. The affidavit produced by Lexington's Product Lead that only declares a loss of "no less than $202,585.17" is wholly insufficient to qualify as ascertainable. Filing 40-2 at 3 (¶ 16). Therefore, the Court concludes that an entry of default judgment against the Epperson Defendants for $202,990.17 would be premature because the record does not sufficiently support the award of damages.

d. The Court Will Require Further Submissions to Determine Damages.

The Eighth Circuit has cautioned that a court's "entry of default judgment is not favored by the law and 'should be a rare judicial act.'" *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (quoting *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993)) (internal citation omitted). When a party applies to the court for default judgment, "[t]he court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). "The need for a hearing is within the sound discretion of the district court." *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008).

Lexington's request for entry of default judgment is appropriate on all counts. The Epperson Defendants have seemingly avoided service of process and have failed to plead or otherwise defend as required by the federal rules. Nevertheless, the sufficiency of proof provided

by Lexington regarding the amount of damages asserted is inadequate. Although Lexington clearly possesses a cause of action against the Epperson Defendants, the Court cannot award unexplained damages. Presumably, the requested amount reflects the amount of losses for which Lexington indemnified Watkins. Nevertheless, Lexington must provide the Court with sufficient evidence to substantiate the value. Sufficient evidence could take the form of records demonstrating how that value was calculated in indemnifying Watkins originally or the evidence provided to Lexington by Watkins for the losses. Declarations alone—even under oath—are likely insufficient if they are merely conclusory. Therefore, the Court determines that further submissions are appropriate to "determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).

The Court does not believe that a hearing is necessary to present such information. *Stephenson*, 524 F.3d at 916 ("The need for a hearing is within the sound discretion of the district court."); Fed. R. Civ. P. 55(b)(2)(B). Rule 55(b) expressly states that the Court "may" set a hearing, thus indicating the matter is in the Court's discretion. Fed. R. Civ. P. 55(b)(2)(B). Here, "the Court intends to decide the motion based upon [Lexington's] submissions, and any response from [the Epperson Defendants]." *Shattuck v. Lewis*, No. 4:24-CV-00336 HEA, 2024 WL 5165716, at *2 (E.D. Mo. Dec. 19, 2024). Such submissions must present the evidence necessary to determine the amount of damages and to investigate any related matters. *See* Fed. R. Civ. P. 55(b)(2) (recognizing that the Court may need further proceedings *inter alia* to "determine the amount of damages" and to "investigate any other matter" before entering default judgment). Therefore, the Court will set deadlines below for the submission of evidence of the amount of damages as well as any response.

*3. Summary*

The Court reserves judgment on Lexington's Motion for Default Judgment until further evidence is filed supporting the amount of damages requested. The Court finds that the record does not currently support an entry of default judgment for $202,990.17.

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1. The Epperson Defendants' Motion to Quash in Filing 42 is DENIED.
2. The Epperson Defendants' Motion to Vacate Entry of Default in Filing 42 is DENIED.
3. The Epperson Defendants' Motion to Dismiss in Filing 42 is DENIED.
4. Ruling is reserved on Lexington's Motion for Default Judgment, Filing 40, until further evidence is filed supporting the amount of damages.
    a. Lexington has to and including September 4, 2026, to submit further evidence in support of the amount of damages and any supporting brief it believes is appropriate;
    b. The Epperson Defendants have to and including September 18, 2026, to file a response if they so desire; and
    c. If the Epperson Defendants file a response, Lexington shall have to and including September 25, 2026, to file any reply.

Dated this 21st day of August, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge