IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, as assignee and subrogee of NEBCO, Inc. and Watkins Concrete Block,<br><br>Plaintiff,<br><br>vs.<br><br>JERRY PIERRO, ALONZO BALTAZAR, JAKE EPPERSON and JAKE'S CUSTOM LAWNS LLC,<br><br>Defendants. | **8:25-CV-522**<br><br>**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST THE EPPERSON DEFENDANTS AND DETERMINING DAMAGES** |

This case involves allegations of misconduct by employees and customers of a building materials supplier, brought by the supplier's insurer, as subrogee, to recover over $200,000 in losses to the supplier for which the insurer has indemnified the supplier. Filing 1. The Court previously reserved ruling on Plaintiff Lexington Insurance Company's (Lexington's) Motion for Entry of Default Judgment for Sum Certain (Motion for Default Judgment) against Defendants Jake Epperson and Jake's Custom Lawns LLC (the Epperson Defendants) until the parties provided further evidence supporting the amount of damages requested. Filing 45. This case is now before the Court on Plaintiff's Submission of Additional Evidence in Support of Motion for Default Judgment. Filing 46. For the reasons stated below, the Court now grants Lexington's Motion for Default, determines damages, and orders entry of default judgment in favor of Lexington and against the Epperson Defendants in the amount of $202,990.17.

## I. INTRODUCTION

### A. Factual Background

Lexington insures NEBCO and its subsidiaries for losses sustained due to employee dishonesty. Filing 1 at 4 (¶ 24). One subsidiary of NEBCO is Watkins Concrete Block (Watkins), a supplier of building materials located in Omaha, Nebraska. Filing 1 at 2 (¶¶ 9–10).

From 2019 through March 17, 2023, NEBCO and Watkins suffered losses resulting from a kickback scheme developed between two employees and several customers of Watkins. Filing 1 at 3 (¶¶ 14, 20); *see* Filing 46-1. Defendant Jerry Pierro and defendant Alonzo Baltazar, both citizens and residents of Omaha, Nebraska, worked for Watkins as "Yard Materials Handlers." Filing 1 at 1 (¶¶ 2–3), 2 (¶ 9). They were responsible for loading purchased materials into a customer's vehicle according to the quantity specified in the receipt issued by Watkin's main office. Filing 1 at 2 (¶¶ 11–13). Lexington alleges that defendants Pierro and Baltazar developed a kickback scheme with certain customers where they would "load a greater quantity of the materials than specified on the receipt" and receive an "'under-the-table' cash payment" from participating customers. Filing 1 at 3 (¶¶ 17–18). Jake's Custom Lawns, LLC (Custom Lawns), a Nebraska limited liability company with its principal place of business in Omaha, Nebraska, participated in this scheme with defendants Pierro and Baltazar through its sole member, defendant Jake Epperson, a citizen and resident of Nebraska. Filing 1 at 1–2 (¶¶ 4–6); Filing 1 at 3 (¶ 14).

On June 1, 2023, Watkins submitted a sworn and notarized Proof of Loss to Lexington claiming damages of $208,932.59. Filing 46-3 at 2. Following the claim's filing, Lexington attests that its own Forensic Accounting Unit independently verified the claimed loss in a Loss Narrative Report dated April 15, 2024. Filing 46 at 2–3; Filing 46-1. Lexington detailed the methodology that its Forensic Accounting Unit used in its Submission of Additional Evidence in Support of Motion for Default Judgment, stating:

> A. Forensic Accounting Verification
>
> Lexington's Forensic Accounting Unit . . . independently verified the claimed loss in a Loss Narrative Report dated April 15, 2024. The FAU reviewed inventory count adjustments spanning February 2019 through May 2023, purchase and transportation invoices, internal production cost records, a recorded interview of co-conspirator Jerry Pierro Jr., the police report, and Watkins' responses to multiple Requests for Information.
>
> B. Calculation of Damages.
>
> The [Forensic Accounting Unit] determined losses by comparing monthly physical inventory counts against expected levels, attributing to the scheme all shortages exceeding four to five pallets per count, and verifying unit costs against supplier invoices and internal production records. The [Forensic Accounting Unit] confirmed a corrected gross loss of $209,703.36, broken down as $68,148.34 (policy period June 2022–June 2023), $82,459.31 (June 2021–June 2022), $34,098.42 (June 2020–June 2021), $24,619.04 (June 2019–June 2020), and $378.25 (June 2018–June 2019).
>
> The [Forensic Accounting Unit] found no discrepancy between claimed and documented amounts. After crediting $7,118.19 in PTO payroll withheld from Pierro ($4,666.16) and Baltazar ($2,452.03), the verified total loss was $202,585.17.

Filing 46 at 2–3 (citations omitted). Lexington indemnified NEBCO and Watkins in the amount of $197,585.17, the total loss less a $5,000 policy deductible. Filing 1 at 4 (¶ 25); Filing 46-4 at 2. Lexington also became subrogated to NEBCO and Watkins. Filing 1 at 4 (¶ 26); Filing 46-4.

### B. Procedural Background

Lexington, as assignee and subrogee of NEBCO and Watkins, filed its Complaint against Jerry Pierro, Alonzo Baltazar, and the Epperson Defendants on August 26, 2025. Filing 1. Lexington's Complaint included five claims: fraud (Count I), conversion (Count II), civil conspiracy (Count III), breach of fiduciary duty (Count IV), and unjust enrichment (Count V). Filing 1. Claim IV was specific to defendants Pierro and Baltazar. Filing 1 at 7. Defendants never filed an answer or any responsive motion. Filing 37 at 1; Filing 45 at 14–15; *see* Fed. R. Civ. P. 55(a).

On May 12, 2026, Lexington requested that the Clerk of Court enter default against the Epperson Defendants "on the basis that the record in this case demonstrates that [the Epperson] Defendants have failed to plead or otherwise defend." Filing 37 at 1. The Clerk filed the Entry of Default. Filing 38. The next day, Lexington filed the Motion for Default Judgment against the Epperson Defendants now before the Court. Filing 40.

On May 28, 2026, the Epperson Defendants filed a Notice of Limited Special Appearance. Filing 41. Also on May 28, 2026, the Epperson Defendants filed its Motion to Quash Service, Vacate Clerk's Entry of Default, Dismiss Under Fed. R. Civ. P. 4(m), and Deny Plaintiff's Motion for Default Judgment (Epperson Defendants' Motion). Filing 42.

On August 21, 2026, this Court denied the Epperson Defendants' Motion. Filing 45. Relevant to the narrow issue of default judgment, the Court determined that the Clerk properly entered default against the Epperson Defendants and that Lexington adequately demonstrated that the Epperson Defendants have "failed to plead or otherwise defend" in this litigation. Filing 45 at 15 (quoting Fed. R. Civ. P. 55(a)). Nevertheless, the Court reserved judgment on Lexington's Motion for Default Judgment because the record failed to provide sufficient support for the award of damages. Filing 45 at 20–21. Therefore, the Court required the parties to submit further evidence to "determine the amount of damages." Filing 45 at 22 (quoting Fed. R. Civ. P. 55(b)(2)(B)). The parties made the appropriate supplemental filings. Filing 46; Filing 47; Filing 48.

## II. LEGAL ANALYSIS

### A. The Court Grants Lexington's Motion for Default Judgment

#### *1. Relevant Legal Standards*

At the default judgment stage, "[a] defaulted claim . . . precludes a party from contesting the facts in the complaint establishing liability. The facts that relate to the amount of the plaintiff's

damages, by contract, are fair game." *Cutcliff v. Reuter*, 791 F.3d 875, 882–83 (8th Cir. 2015). Therefore, a party seeking default judgment must prove the amount of damages to be awarded. *Oberstar v. FDIC*, 987 F.2d 494, 505 n.9 (8th Cir. 1993); *see* Fed. R. Civ. P. 55(b)(2).

Actual damages must be proven "to a reasonable degree of certainty." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). The Eighth Circuit has cautioned that "generic reference to evidentiary support for the damages determination" by parties or a district court evaluating the record are insufficient. *Stephenson v. El-Batrawi*, 524 F.3d 907, 917 (8th Cir. 2008). Accordingly, "[o]nce the amount of damages has been established, the court may enter judgment pursuant to the rule." *Stephenson*, 524 F.3d at 916; *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (recognizing that "a default judgment cannot be entered until the amount of damages has been ascertained" (citation omitted)).

2. *Lexington Supplemented Its Filings with Sufficient Evidence to Support the Damages Amount Claimed*

The Court finds that Lexington provided sufficient information explaining the amount of damages alleged in the Complaint. *See* Filing 46. The Proof of Loss documentation provided by Lexington summarizes the calculations and methodology applied by Lexington's Forensic Accounting Unit investigating Watkins's claim. Filing 46-1 at 2–3. Originally, Watkins filed the claim for "a loss sustained in the amount of $208,932.59." Filing 46-3 at 2. While investigating, Lexington's Forensic Accounting Unit reviewed "various documents and information that were provided as evidence and support of the alleged misappropriation."[1] Filing 46-1 at 3. After

[1] These documents included:

- Inventory Count Adjustments from February 14, 2019, through March 21, 2023,
- Inventory Count Adjustments from March 23, 2023, through May 18, 2023,
- Various Supporting Documentation, such as:
    - Watkins Purchase and Transportation Invoices,
    - Cost to Manufacture Pavers,

correcting the claim for a "math error," Lexington's Forensic Accounting Unit concluded on the basis of the investigation evidence that the gross calculation amounted to $209,703.36. Filing 46-1 at 3–4; Filing 46-2 at 2, 7, 16, 21, 23. Lexington then deducted the amounts of withheld PTO payout for the defendant employees involved in the misconduct at issue in the claim and concluded that "[t]he net amount, after applying the deductible of $5,000, is $197,585.17." Filing 46-1 at 3. Thus, the total damage incurred and recoverable by Lexington—adding the net amount of $197,585.17 and the $5,000 deductible—results in the consistent amount claimed throughout this litigation of $202,585.17. Filing 1; Filing 40. When Lexington filed its Motion for Default Judgment, it added costs "the amount of $405.00 for the filing of the complaint in this case." Filing 40 at 1.

The Court has reviewed Lexington's Submission of Additional Evidence and finds that the detailed accounting by the Forensic Accounting Unit makes the amount of damages of $202,990.17 both ascertainable and correct. *Hagen*, 205 F.3d at 1042. Nothing in the supportive exhibits provided by Lexington gives the Court pause in its certainty of the amount of damages. *See Everyday Learning Corp.*, 242 F.3d at 819. Additionally, the Court does not believe that additional proceedings are necessary to determine the amount of damages or any other matter in light of the detailed evidence that Lexington has submitted and the Court has reviewed. *Stephenson*, 524 F.3d at 916 ("The need for a hearing is within the sound discretion of the district court . . . ."); *see* Fed. R. Civ. P. 55(b)(2)(B).

---

- Jerry Pierro Live Interview, dated March 21, 2023,
- Police Report, and
- Watkins' responses to our requests for information.

Filing 46-1 at 3.

*3. Summary*

The Court concludes that the record establishes the amount of damages as $202,990.17. Therefore, the Court can now order entry of default judgment pursuant to Rule 55(b)(2). *See* Fed. R. Civ. P. 55(b)(2).

**B. The Court Orders Entry of Default Judgment in Favor of Lexington and Against the Epperson Defendants**

Lexington is entitled to a default judgment. *See* Fed. R. Civ. P. 55(b)(2). The Clerk of Court properly entered a default against the Epperson Defendants on May 12, 2026, pursuant to Rule 55(a). Filing 38; Filing 45 at 15; Fed. R. Civ. P. 55(a). The Court already concluded that a cause of action against the Epperson Defendants exists to support a basis for entry of default judgment under Rule 55(b)(2). Filing 45 at 20. The Court concludes that sufficient information now exists in the record to support an amount of damages. *See* Section II.A.2. Therefore, the entry of default judgment in favor of Lexington and against the Epperson Defendants in the amount of $202,990.17 is appropriate pursuant to Rule 55(b)(2).

The Court rejects the Epperson Defendants' request for a hearing to determine the amount attributable to the Epperson Defendants. Filing 47 at 10–11. "Under Nebraska common law, an act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders them liable for all damages, both economic and noneconomic, jointly and severally." *Tadros v. City of Omaha*, 735 N.W.2d 377, 380 (Neb. 2007). Here, all of the Defendants in this litigation are properly joined as joint tortfeasors. *See* Fed. R. Civ. P. 20(a)(2); *accord* Filing 45 at 20. "When liability is joint and several, damages are assessed in a single sum and are not apportioned among tortfeasors." *Yeldell v. Tutt*, 913 F.2d 533, 544 (8th Cir. 1990); *see Shipler v. Gen. Motors Corp.*, 710 N.W.2d 807, 843 (Neb. 2006) ("Under joint and several liability, either tort-feasor may be held liable for the entire damage . . . ." (citing

*Lackman v. Rousselle*, 596 N.W.2d 15 (Neb. 1999))). Therefore, a hearing is unnecessary because the Epperson Defendants are jointly and severally liable for the amount of $202,990.17.

The Court also rejects as untimely and irrelevant the Epperson Defendants' other arguments. *See* Filing 47. The Court already determined the issue of liability which therefore "precludes [the Epperson Defendants] from contesting the facts in the complaint that establish liability." *Cutcliff*, 791 F.3d at 882; *see* Filing 47 at 2–5. The Court only needed to evaluate the evidence "relating to the amount of damages" to determine whether the value was sufficiently supported by the record. Fed. R. Civ. P. 55(b)(2).

## III. CONCLUSION

The Eighth Circuit has cautioned that a court's "entry of default judgment is not favored by the law and 'should be a rare judicial act.'" *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (internal citations omitted) (quoting *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993)). Nevertheless, entry of default judgment in favor of Lexington and against the Epperson Defendants is appropriate here. *See Stephenson*, 524 F.3d at 915–16. Accordingly,

IT IS ORDERED:

1. Plaintiff Lexington Insurance Company's Motion for Default Judgment, Filing 40, as supplemented by Lexington's Submission of Additional Evidence, Filing 46, is granted;
2. Judgment shall enter in favor of Lexington Insurance Company and against Defendants Jake Epperson and Jake's Custom Lawns LLC in the amount of $202,990.17; and
3. A separate judgment will be entered.

Dated this 7th day of October, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge